UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 26-20190-CIV-DAMIAN/D'Angelo**

**NATURAL EXTRACTION SYSTEMS, LLC**,

      Plaintiff,

v.

**GREEN THUMB INDUSTRIES INC.**, *et al.*,

      Defendants.

_____/

**ORDER GRANTING DEFENDANTS'
MOTION TO TRANSFER VENUE [ECF NO. 33]**

**THIS CAUSE** came before the Court on Defendants', Green Thumb Industries Inc. ("GTI"), GTI Florida, LLC ("GTI Florida"), and KSGNF, LLC's ("KSGNF" and collectively, "Defendants"), Motion to Transfer Venue ("Motion") [ECF No. 33], filed on March 27, 2026.

THE COURT has reviewed the Motion, the Response, Reply, and Sur-Reply thereto [ECF Nos. 35, 41, 55], the record, and the applicable law and is otherwise fully advised.

## I. BACKGROUND

On January 12, 2026, Plaintiff, Natural Extraction Systems, LLC ("NES" or "Plaintiff"), filed a Complaint, asserting claims of patent infringement against the Defendants. *See generally* ECF No. 1 ("Complaint"). NES is a limited liability company organized in Colorado with its principal place of business in Boulder, Colorado. *See id.* ¶ 32. Defendant GTI is a corporation incorporated in British Colombia, Canada, with a principal place of business in Chicago, Illinois, and Defendants GTI Florida and KSGNF are limited liability companies organized in Florida with principal places of business in Chicago, Illinois.

*See id.* ¶¶ 33, 35-36. GTI is the parent company of Defendants KSGNF and GTI Florida, which develop, produce, and sell cannabis distillate products in Florida. *See id.* ¶¶ 37-38, 42-45. NES alleges that KSGNF and GTI Florida are both subsidiaries and alter egos of GTI, in that all three entities "are so intermingled and intertwined that they are essentially a single entity and common enterprise." *See id.* ¶ 68-69.

NES is an extraction and distillation technology company that owns four patents, which NES alleges Defendants are infringing in their production of medicinal cannabis products ("Asserted Patents"). *See id.* ¶¶ 24-31.

In the Motion now before this Court, the Defendants seek transfer of this case to the Northern District of Illinois. *See generally* Mot. They argue transfer is warranted under 28 U.S.C. § 1404(a) because the action could have been brought in the Northern District of Illinois and because the location of party and non-party witnesses, the location of documents and sources of proof, the convenience of the parties, the *locus* of operative facts, and the public interest factors favor transfer. NES filed a response in opposition to the Motion, arguing that the action could not have been filed in the Northern District of Illinois because venue in patent actions is defendant-specific, and the Motion does not set forth how the two Florida LLCs are located in Illinois. *See* Resp. at 4-6. Further, NES argues that there are several key witnesses located in this District and that Florida is the center of the accused activity, meaning the manufacture of the allegedly infringing products occurred in Florida. *See id.* at 8-12.

In the Defendants' Reply in support of their Motion, the Florida-based Defendants affirmatively consent to personal jurisdiction and venue in the Northern District of Illinois and provide additional argument regarding the presence of relevant witnesses and documents. *See generally* Reply. This Court then granted leave for NES to file a Sur-Reply, in which NES

2

addresses Defendants' affirmative consent to venue and personal jurisdiction and argues that letting defendants take control of the question of venue by consenting to jurisdiction in their preferred venues would improperly diminish the plaintiff's venue choice. *See* Sur-Reply at 2-4.

The Motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Federal law provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (Moore, J.) (citation omitted). Courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *accord Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) (Gold, J.).

Once a court finds an action could have been brought in the transferee forum, the court "must weigh various factors . . . to determine if a transfer . . . is justified." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (Nesbitt, J.) (citation omitted). Courts should consider at least the following private and public interest factors to determine whether transfer is appropriate:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a

3

forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted); *see also Meterlogic*, 185 F. Supp. 2d at 1300.

It is the movant's burden to establish transfer is warranted. *See Cent. Money Mortg. Co. [IMC], Inc. v. Holman*, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000). This burden is high: a plaintiff's choice of forum "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation and internal quotation marks omitted); *accord Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) (Moore, J.) ("Transfer can only be granted where the balance of convenience of the parties *strongly favors* the defendant." (emphasis in original; citations omitted)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." *Windmere Corp.*, 617 F. Supp. at 10 (citations omitted).

## III.  DISCUSSION

The parties agree that, under Section 1404(a), before this Court reaches the balancing of interests, it must first determine if this action originally "might have been brought" in the Northern District of Illinois.

### A.     *The Action Might Have Been Brought In The Northern District of Illinois.*

An action might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum. *See Meterlogic*, 185 F. Supp. 2d at 1299.

1. Subject Matter Jurisdiction.

Because this is a patent-infringement action, the federal court in the Northern District of Illinois has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338. *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any act of Congress relating to patents[.]").

2. Venue.

In a patent infringement case, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *See id.* § 1400(b).

The Supreme Court has directly addressed the question of where a domestic corporation "resides" for purposes of patent venue and concluded that domestic corporations reside only in their states of incorporation. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270 (2017) ("As applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation."). The Supreme Court explicitly "confined its analysis" in *TC Heartland* to proper venue for domestic corporations and left the question open for both unincorporated entities and foreign corporations. *Id.* at 262 n.1; *id.* at 268 n.2. None of the Defendants here are domestic corporations.

**Green Thumb Industries Inc. ("GTI")**

GTI is not a domestic corporation because it was incorporated in British Columbia, Canada. *See* Compl. ¶ 33. In *Brunette Machine Works, Limited v. Kockum Industries, Inc.*, 406 U.S. 706, 714 (1972), the Supreme Court addressed the issue of venue for foreign corporations. In *Brunette*, the Court held that venue is proper over a foreign corporate defendant in any judicial district. *Id.* In its later decision *TC Heartland*, the Court did not

disturb its holding in *Brunette*, in which the Court explained that "suits against aliens are wholly outside the operation of all the federal venue law, general and special." *See TC Heartland*, 581 U.S. at 268 n.2 ("We do not here address [the question of foreign corporation residence], nor do we express any opinion on this Court's holding in [*Brunette Machine Works*] (determining proper venue for foreign corporation under then existing statutory regime)."); *accord Rehrig Pac. Co. v. Polymer Logs. (Israel), Ltd.*, No. CV-318-055, 2019 WL 2407504, at *3 (S.D. Ga. June 6, 2019) (applying *Brunette Machine Works* and concluding that "venue is proper over a foreign corporate defendant in any judicial district, even in patent infringement actions"). Consistent with the foregoing precedent, this Court finds that venue as to the Canadian corporation GTI is proper in the Northern District of Illinois.

### GTI Florida and KSGNF

As alleged in the Complaint, Defendants GTI Florida and KSGNF are limited liability companies organized in Florida with principal places of business in Chicago, Illinois. *See* Complaint. ¶¶ 33, 35-36.

Neither the Supreme Court nor the Eleventh Circuit has addressed the issue of where limited liability companies "reside" for purposes of venue in patent infringement cases. Therefore, this Court turns back to the plain language of the statute. As set forth above, § 1400(b) provides two alternatives for venue: (1) the judicial district where the defendant resides; or (2) "where the defendant has committed acts of infringement and has a regular and established place of business."

In the Complaint, NES alleges that GTI Florida and KSGNF have their principal places of business in Chicago, Illinois. *See* Complaint ¶¶ 33, 35-36. Therefore, the question is where these defendants committed the alleged acts of infringement.

6

NES alleges the Defendants infringed its patents in two ways: (1) by developing processes and technologies that infringed NES's patents; and (2) by incorporating its technology into infringing products manufactured and sold in Florida. *See id.* ¶¶ 28-29. While NES does not include background allegations regarding how Defendants allegedly encountered the Asserted Patents or came to copy NES's processes or, crucially, where this allegedly occurred, Defendants attached to their Motion a declaration from their counsel, Matthew Zuziak, who addresses these issues. In the declaration, Zuziak explains where the allegedly infringing conduct would have occurred. *See generally* ECF No. 33-1 ("Zuziak Declaration"). While Zuziak acknowledges that the Complaint concerns manufacturing activities taking place at KSGNF's cannabis processing facilities in Homestead and Ocala, Florida, he explains that the accused methods were not developed nor were infringing products designed in Florida. *See id.* ¶ 18. According to Zuziak, the accused methods were developed in and the allegedly infringing equipment was designed in Chicago, and those with "knowledge of the research, development, testing, significant design and engineering decisions, marketing, finance, and sales related to the accused methods are primarily located in Chicago, Illinois, within the Northern District of Illinois." *Id.* ¶¶ 18, 20.

In the Response, NES argues that the statements in the Zuziak Declaration improperly group together all three Defendants in an effort to avoid Section 1400(b)'s requirement that venue be proper as to *each* Defendant. *See* Resp. at 12. However, this Court notes that in the Complaint, NES has affirmatively grouped these Defendants together as alter egos and explicitly refers to all three entities as "so intermingled and intertwined that they are essentially a single entity and common enterprise." *See* Compl. ¶ 69; *see also Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1125 (Fed. Cir. 2021) ("Venue may be imputed under an

7

alter-ego or veil-piercing theory."). NES also uses the collective "Defendants" to refer to the Defendants interchangeably in Paragraphs 187 through 313 of the Complaint (the "Factual Background & Defendants' Infringement" section of the Complaint). The undersigned finds that treatment of the three Defendants as part of one singular enterprise for venue purposes is consistent with how NES has itself described these Defendants in the Complaint. Put differently, it is disingenuous for NES to spend close to 200 paragraphs alleging a complex web of ownership and control with the goal of subjecting GTI to the liabilities of its subsidiaries under a theory that they all make up a "single enterprise" for purposes of alter ego liability without acknowledging that the "single enterprise" theory also lends itself to venue being proper as to all Defendants in the Northern District of Illinois. In the Complaint, the Florida-registered LLC Defendants likewise allegedly "committed acts of infringement" in Chicago, where "the research, development, testing, significant design and engineering decisions, marketing, finance, and sales related to the accused methods" primarily took place. *See* Zuziak Decl. ¶ 20.

At bottom, based on the allegations in the Complaint and the information set forth in the Zuziak Declaration, Defendants GTI Florida and KSGNF committed alleged acts of infringement in Chicago, Illinois. Therefore, this Court is satisfied that venue is proper for these Defendants in the Northern District of Illinois under § 1400(b) because these Defendants have their principal places of business and committed the allegedly infringing conduct there.

    3.  <u>Service of Process</u>.

As to the final element, amenability to process, Defendants have the burden to show that they are subject to personal jurisdiction in the Northern District of Illinois. *See* Charles A. Wright & Arthur R. Miller, 15 Fed. Prac. & Proc. § 3845 (4th ed. 2026) (explaining that

8

amenability to process is a question of personal jurisdiction over the defendant). Defendants have met their burden because they all have their principal places of business in Chicago. *See* Compl. ¶¶ 33, 35, 36; Zuziak Decl. ¶¶ 8, 10, 20, 29-31, 34; *see also Seoul Semiconductor Co. v. Satco Prods., Inc.*, No. 19-21507-CIV, 2019 WL 11318054, at *2 (S.D. Fla. July 31, 2019) (Cooke, J.) (finding that the defendant met the requirement to show amenability to process because the defendant's headquarters and principal place of business lied within the transferee judicial district); *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985) (Nesbitt, J.) (finding that the defendants were amenable to process issuing out of the transferee court because the corporate defendant did business and maintained offices in transferee court district); *Gibson v. Scap*, No. 11-cv-949-T-33TGW, 2012 WL 1288880, at *2 (M.D. Fla. Apr. 16, 2012) (finding that the defendant limited liability company was amenable to process in transferee district because company's principal place of business was in the transferee district).

Accordingly, this Court finds that Defendants have satisfied the preliminary inquiry— whether the action might originally have been brought in the transferee district. This Court turns to examine the remaining factors under § 1404(a).

### B.     *Transfer Would Serve The Convenience Of The Parties And Interests Of Justice.*

As discussed above, when considering the private and public interest factors, this Court weighs the following: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the *locus* of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

9

1. The Convenience Of The Witnesses.

The convenience of the party and non-party witnesses is the most important factor in when analyzing whether to grant a motion to transfer. *See Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-Civ, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (Marra, J.) ("The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." (citation omitted)). Defendants assert the Northern District of Illinois is a more convenient forum than this District because the Defendants' employees and potential witnesses with knowledge of the research, development, testing, design and engineering decisions, marketing, finance, and sales related to the allegedly infringing products are located in the Northern District of Illinois. *See* Zuziak Decl. ¶ 21. Further, Defendants identify non-party Chemtech Services, Inc., the manufacturer of the distillation system referenced extensively in the Complaint, which is also located within the Northern District of Illinois. *Id.* ¶ 24. In his Declaration, Zuziak avers that Chemtech is likely to have knowledge regarding the design and operation of the alleged infringing products, their technical specifications, and the industry standards for the short-path distillation technology that is central to this lawsuit. *Id.* ¶ 25. Defendants also assert that three witnesses with material knowledge of the accused distillation process, the Vice President of Extraction and Formulation, the Regional Extraction and Formulation Manager, and the Product Development Scientist, all reside in the Northern District of Illinois. *See* ECF No. 41-1 ¶ 24.

NES, on the other hand, argues that the conveniences of the witnesses favors South Florida for several reasons. They identify several Florida-based nonparty witnesses, including the KSGNF founder, a former GTI director, and a former GTI general manager. *See* Resp. at

13. NES also identifies four KSGNF and GTI Florida employees who may be called as witnesses and who are located in Florida. *Id.* at 14. However, per NES's own submissions, it appears that the former GTI general manager is actually located in Massachusetts, not Florida; and the former GTI director is located in Naples, Florida, which, though closer to the federal courthouse in Miami than Chicago, is not within the Southern District of Florida. *See* ECF No. 35-1, Exs. 5-6. As for its claim that the KSGNF founder is located in Florida, NES offers nothing to support this representation. Finally, as to the four KSGNF and GTI Florida employee witnesses, Defendants counter, through the declaration of GTI counsel Bret Kravitz, that those employees are unlikely to be called as witnesses as they are all GTI employees who perform downstream operational functions, did not develop or design the accused distillation methods, and report directly to the Chicago-based GTI witnesses identified by Defendants in the Motion. *See* ECF No. 41-1 ¶ 25 ("Kravitz Declaration").

NES does not address this argument in its Sur-Reply except to state that "Defendants do not contend that they possess superior or unique knowledge of the accused processes compared to the Florida-based witnesses NES identified." Sur-Reply at 4. The record reflects otherwise. In his Declaration in support of the Motion, GTI counsel Bret Kravitz states that the Defendants' Illinois-based witnesses are "responsible for overseeing cannabis extraction and distillation processes in all states in which GTI operates," while the Florida-based witnesses identified by NES "did not develop or design the accused distillation methods." *See* Kravitz Decl. ¶¶ 24-25.

11

The parties' submissions show that most witnesses in this matter are employees of the parties,[1] and, as to the nonparty witnesses, the record shows that there is one in Naples, one in Massachusetts, and some number of Chemtech employees in Illinois who are relevant fact witnesses. Thus, although not overwhelming, the undersigned finds that, on balance, the evidence regarding the convenience of witnesses favors the Northern District of Illinois over this District.

2. <u>The Location Of Relevant Documents And The Ease Of Access To Proof</u>.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation and internal quotations marks omitted). However, as both parties acknowledge, in this age of electronic discovery, the burden to produce documents in different districts has been greatly reduced due to technological advancements, so the location of relevant documents is not as relevant to the convenience factors as it used to be. *See* Mot. at 14; Resp. at 16; *Game Controller Tech. LLC v. Sony Comp. Ent't Am. LLC*, 994 F. Supp. 2d 1268, 1274 (S.D. Fla. 2014) (Altonaga, J.). Neither party proffers evidence upon which this factor is anything other than neutral.

3. <u>The Convenience Of The Parties</u>.

This Court understands that litigation in the Southern District of Florida will be less convenient for the Defendants than litigation in the Northern District of Illinois would be. *See* Mot. 15-16. Defendants aver that their "principal place of business is Chicago, its relevant

---

[1] *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (noting that the significance of the convenience of the witnesses "is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party").

executives, engineers, operations personnel, and staff are in Chicago, where corporate parent GTI is headquartered." *Id.* at 15. The Defendants' inconvenience must be weighed against any inconvenience caused to NES if the action is transferred. *See Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991) (Aronovitz, J.). While NES filed suit in this District such that this venue is presumably convenient for it, this Court observes that NES does not argue that South Florida is particularly more convenient than any other venue, and it has not shown that it has any ties to the Southern District of Florida. *See Game Controller*, 994 F. Supp. 2d at 1274 (observing that the nonmovant "has no identifiable employees in this District, and no office bears its name here" when concluding that the convenience of the parties factor favored transfer).

Notably, NES's headquarters are in Boulder, Colorado, and it has not shown that it has ties to Florida. *See* Mot. at 16. When one set of witnesses "will be required to travel a significant distance no matter where they testify . . . . [and] there are a substantial number of witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home" this factor should favor transfer. *In re Genentech, Inc.*, 566 F.3d at 1344 (citations omitted).

Because all the Defendants' "relevant executives, engineers, operations personnel, and staff are in Chicago," *see* Mot. at 15, and any relevant NES employees will be required to travel a significant distance regardless of where the case is located, this factor favors transfer.

4.   The *Locus* of Operative Facts.

Courts in this District consistently hold "that the 'center of gravity' for a patent infringement case is where the accused product was designed and developed." *Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (Brown, Ch. Mag.

13

J.) (citation omitted). The place where marketing and sales decisions are made and the location where the allegedly infringing product is manufactured are also relevant to this consideration. *See Microspherix LLC v. Biocompatibles, Inc.*, No. 11-cv-80813, 2012 WL 243764, at *4 (S.D. Fla. Jan. 25, 2012) (Moore, J.) ("Several courts have held this to be the location where the allegedly infringing product was designed and manufactured, and from where marketing and sales decisions are made."); *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *3 (S.D. Fla. Feb. 23, 2009) (Marra, J.) ("In this case, it appears to this Court that the center of gravity of the alleged infringement occurred in northern California, where Defendant maintains its global headquarters, where the research and development of the allegedly infringing products occurred, and where the decisions regarding marketing and sales of the accused products were made."). However, the sale alone of allegedly infringing products in a particular venue is not sufficient to establish a center of gravity there. *See Game Controller*, 994 F. Supp. 2d at 1275 ("[The plaintiff] argues [the defendant]'s sale of the accused products in this District is sufficient to establish a locus of operative facts in the Southern District of Florida. The Court rejects this argument and finds the locus of operative facts is in the Northern District of California.").

Here, the record shows that the accused methods were developed in Chicago, Illinois, and that the KDT distillation system that NES relies upon in its infringement allegations was manufactured by Chemtech in Romeoville, Illinois (within the Northern District of Illinois). *See* ECF No. 33-1 ¶¶ 34-35. "GTI controls the manufacturing and sale of products by GTI Florida and KSGNF from its Chicago headquarters." *Id.* ¶ 34. However, NES sufficiently alleges that the Defendants practice the accused distillation methods in Florida, manufacture cannabis distillate at the Homestead and Ocala facilities, and sell products containing that

distillate throughout Florida. *See* Resp. at 17 (citing Compl. ¶¶ 17, 52, 60, 61, 63, 64). The record before this Court shows that while research and development and decisions regarding marketing and sales are made in Chicago, the allegedly infringing products are manufactured in Homestead and Ocala. Because courts view the *locus* as both where the development and strategy are conducted as well as where the infringing manufacture occurs, this Court sees both venues as adequate *loci* (perhaps along with the Middle District of Florida, where Ocala is located). Nevertheless, the Defendants have produced stronger evidence that the Northern District of Illinois is more the "center of gravity" than this District. As such, this factor leans in favor of transfer.

     5.  <u>The Availability of Process to Compel Unwilling Witnesses.</u>

"[C]ourts generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court." *Wi-LAN USA, Inc. v. Apple Inc.*, No. 12-cv-24318, 2013 WL 1343535, at *4 (S.D. Fla. Apr. 2, 2013) (Moore, J.) (alteration in original; citation omitted).

Defendants identify Chemtech Services, Inc., located thirty miles from the federal courthouse in Chicago, as a relevant nonparty whose employees will be material witnesses in this case and who are outside the subpoena power of this Court. *See* ECF No. 33-1 ¶ 24. NES points to the same former GTI director, former GTI general manager, and KSGNF founder as witnesses who are within the subpoena power of this Court and not the Northern District of Illinois. *See* Resp. at 19.

This Court has already discussed the various witnesses who are not tied to the Northern District of Illinois upon whom NES's claims regarding convenience of witnesses are based. In the context of ability to subpoena witnesses to compel testimony, NES has not

shown a basis to find that the Defendants' affiliates and employees would not be willing to travel to the Northern District of Illinois to testify or would be unwilling to accept process. *See Microspherix*, 2012 WL 43764, at *5 ("There is no indication that Mr. Lamoureux is actually unwilling to testify, and as the former owner of [the defendant's predecessor-in-interest], and a former chairman of [the defendant], this Court has no reason to believe Mr. Lamoureux will not be available to testify."). Likewise, the Defendants have not shown that there are witnesses who would be unavailable to testify should the case proceed in this District. In any event, it is not clear that a party must show actual unwillingness to testify. *See Wi-LAN USA*, 2013 WL 1343535, at *4 (favoring transferee venue in patent infringement action where underlying infringing technology was manufactured by a third party located in the transferee venue and S.D. Fla. has no subpoena power over that third party's employees, despite the movant "not present[ing] any evidence that the witnesses located in [the transferee venue] are actually unwilling to travel to Florida to testify").

Based on the information submitted by the parties, overall, it appears that the Northern District of Illinois is the preferable venue for the exercise of subpoena power over the most germane third-party witnesses—employees of Defendants' manufacturer Chemtech. The record does not contain enough to indicate that there are any witnesses who would be unwilling to testify in Illinois. Therefore, this factor also favors transfer.

      6.   The Relative Means of the Parties.

Defendant GTI is a cannabis industry giant with over $1.1 billion in annual revenue and over one hundred dispensaries in the United States. *See* Resp. at 20. NES is also a sophisticated business entity and industry leader, describing itself as "the world's leading manufacturer of certified USDA organic hemp extract by volume sold." *See* Mot. at 20 (citing

16

Compl. ¶ 10). As such, it does not appear that either party will be prejudiced due to the lack of means to litigate the case in any particular forum, as both sides are business entities with ample means. *See Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1227 (S.D. Fla. 2016) (Bloom, J.) (finding that means of the parties weighed neutrally to transfer where movants were large publicly-traded companies and the nonmovant was a limited family partnership). The sides agree that this factor does not really move the needle in the analysis. *See* Mot. at 21 ("This factor is neutral."); Resp. at 20 ("This factor is therefore neutral or slightly weighs against transfer."). This Court considers this factor as neutral.

       7.   The Forum's Familiarity with the Governing Law.

This factor is also neutral because all "federal district courts are equally capable of understanding and applying federal patent law." *Seoul Semiconductor Co. v. Curtis Int'l*, No. 14-22729-CIV, 2014 WL 12629682, at *7 (S.D. Fla. Dec. 10, 2014) (Altonaga, J.). Defendants raise the argument that the Northern District of Illinois is better-suited to hear this case because it appears the Northern District of Illinois handles approximately three times the number of patent cases handled in the Southern District of Florida by comparing active caseloads. *See* ECF Nos. 33-4, 33-5. The Northern District of Illinois also has a set of Local Patent Rules to further help these sorts of cases be addressed most efficiently. *See* ECF No. 33-3. While interesting, the undersigned is not persuaded that this information favors transfer, especially because governing law "is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Clinton v. Sec. Benefit Life Ins. Co.*, No. 19-24803-CIV, 2020 WL 6120565, at *7 (S.D. Fla. June 29, 2020) (Torres, Mag. J.), *report and recommendation adopted* 2020 WL 6120554 (S.D. Fla. July 21, 2020) (Williams, J.).

    8.   Weight Accorded To A Plaintiff's Choice Of Forum.

"'The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.'" *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)). However, "where the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to 'less consideration.'" *Trace-Wilco*, 2009 WL 455432, at *2 (citations omitted). Furthermore, "where a plaintiff has chosen a forum that is not its home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007) (Moore, J.).

That deference is subject to minimization here because NES did not choose its home forum of Colorado and it does not appear NES has any links to South Florida. As such, "only minimal deference is required[.]" *See Cellularvision*, 508 F. Supp. 2d at 1189. Accordingly, although this factor weighs against transfer, it is entitled to only minimal weight.

    9.   Trial Efficiency And The Interests Of Justice.

The public interest factors in trial efficiency and the interests of justice include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Trace-Wilco*, 2009 WL 455432, at *2 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

Defendants argue that this case involves a controversy local to Chicago because the majority of the Defendants' witnesses and documents are in or near Chicago, the primary

third-party manufacturer central to this action, Chemtech, is located in a Chicago suburb, and the only connection to Florida is through the GTI subsidiaries' downstream retail and processing facilities. Mot. at 23.

NES argues that Florida has an interest in this case because two of the Defendants operate cannabis facilities in Florida where they manufacture allegedly infringing products and sell them to Florida consumers. Resp. at 22. As discussed above, although manufacture and downstream sales occurred in Florida, the "center of gravity" tends to be where the accused product was designed and developed, which is the Northern District of Illinois here. *See Motorola Mobility v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) (Brown, Ch. Mag. J.). This suggests that the Northern District of Illinois has the greater interest.

NES also provides case filing statistics showing the Northern District of Illinois has a slower-paced patent docket, with cases seeming to take twice as long to reach jury trial as in the Southern District of Florida (*see* ECF No. 35-1, Exs. 12, 13), and argues that as the smaller company in the litigation who is disadvantaged in a potential war of attrition, it is seeking a speedier resolution in a faster forum. While docket conditions are relevant, their relevance is minimal as compared to the other factors favoring transfer in this case. *See ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, No. 13-80239-CIV, 2013 WL 9827411, at *3 (S.D. Fla. June 14, 2013) (Middlebrooks, J.) ("Although docket conditions in the new venue is relevant, it is only a 'minor consideration' when other factors favor transfer of venue." (citing *Trace-Wilco*, 2009 WL 455432, at *4)).

## IV.  CONCLUSION

For the reasons set forth above, this Court concludes that Defendants have carried their burden of showing the transfer pursuant to 28 U.S.C. § 1404(a) is warranted.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion to Transfer **[ECF No. 33]** is

**GRANTED**. The Clerk is instructed to **TRANSFER** this case to the United States District

Court for the Northern District of Illinois and mark this case as **CLOSED** in this District.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 15th

day of July, 2026.

_____

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

20